# Exhibit 1

Case 4:21-cv-02234   Document 1-2   Filed on 07/09/21 in TXSD   Page 2 of 15

7/2/2021 11:50 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 55016130
By: DANIELLE JIMENEZ
Filed: 7/2/2021 11:50 AM

CAUSE NO. 2021-35240

| | | |
|---|---|---|
| **TRINH VINH BINH,** § | | **IN THE DISTRICT COURT OF** |
| Plaintiff, § | | |
| § | | |
| **V.** § | | **HARRIS COUNTY, T E X A S** |
| § | | |
| **KING & SPALDING, LLP, REGINAL** § | | |
| **R. SMITH, and CRAIG S. MILES,** § | | |
| Defendants. § | | **80th JUDICIAL DISTRICT** |

## PLAINTIFF'S AMENDED PETITION

Trinh Vinh Binh ("Plaintiff") files this Amended Petition complaining of King & Spalding, LLP ("K&S"), Reginald R. Smith ("Smith"), and Craig S. Miles ("Miles") (collectively "Defendants").

### SUMMARY

1. This case illustrates what happens when attorneys, retained by a client to represent that client in arbitration, decide instead to represent their own pecuniary interests and those of a third-party funder and to make a mockery of the fiduciary obligations an attorney owes to their clients.

### PARTIES

2. Trinh Vinh Binh is an individual citizen and resident of Netherlands.

3. King & Spalding, LLP is a Georgia limited liability partnership.

4. Reginald R. Smith is a citizen and resident of Texas.

5. Craig S. Miles is a citizen and resident of Texas.

6. Smith and Miles were at all relevant times acting within the scope of their duties as attorneys with and partners of King & Spalding, LLP.

1

**VENUE**

7. Venue in this proceeding in Harris County is proper under Section 15.002 and Section 15.005 of the Texas Civil Practices & Remedies Code in that: (i) all or a substantial part of the events or omissions giving rise to the claims set forth below occurred in Harris County; (ii) Defendants Smith and Miles reside in Harris County and resided in Harris County at the time the causes of action set forth below accrued; (iii) the principal office of King & Spalding, LLP in Texas is located at 1100 Louisiana, Suite 4100, Houston, Texas 77002; and (iv) all the claims or causes of action set forth below arise out of the same transaction, occurrence or series of transactions or occurrences.

**DISCOVERY CONTROL PLAN**

8. Plaintiff pleads that discovery should be conducted in accordance with Level Two pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

9. Plaintiff seeks monetary relief of over $1,000,000.

**FACTUAL BACKGROUND**

**A. OVERVIEW**

  ***i.   The Engagement***

10. On March 18, 2015, Miles, on behalf of K&S, and Plaintiff entered into an engagement agreement (the "Fee Agreement") for Defendants to represent Plaintiff in a claim in arbitration styled *Trinh Vinh Binh and Binh Chau Joint Stock Company v. The Socialist Republic of Vietnam*, noticed on June 24, 2014 (the "Arbitration"). The Fee Agreement required Defendants to holdback 30% of billings for fees and defer payment of such amount until the conclusion of their representation.

### ii. The Funding Agreement

11. Contemporaneously with the execution of the Fee Agreement, Plaintiff executed a Forward Purchase Funding Agreement to fund the arbitration (the "FPFA") with Burford Capital LLC (f/k/a Gerchen Keller Capital, LLC and/or Van Buren FundingCo, LLC). The FPFA contained a cap on spending for the Arbitration of $4,678,000.00. After initial deployments (distributions) were made off the cap amount for various initial costs/expenses, there remained a $3,690,000.00 cap available for legal expenses. Despite the boilerplate language of the Fee Agreement regarding costs, Defendants represented to Plaintiff and Burford that they could complete the Arbitration within that cap and, in consideration thereof, remained engaged as arbitration counsel by Plaintiff for the duration of the Arbitration. In exchange for fronting expenses for the Arbitration, Burford was supposed to receive their "Purchase Price" (consisting of the total amount of "Deployments" up to the Commitment Amount at the conclusion of the Arbitration).

12. The FPFA also contained complicated and confusing provisions for payment of a "Success Return" to be paid to Burford *and* Defendants in the event Plaintiff was successful in the Arbitration. Under the FPFA, the Success Return was defined as the greater of (a) the sum of (i) two (2) times the Purchase Price and (ii) two (2) times the Contingency Fee. *See Forward Purchase Funding Agreement* at 4. A contingency fee is not referenced in the Fee Agreement, however, the FPFA defined "Contingency Fee" as: "the amount of holdback of or discounts on Arbitration Counsel's fees pursuant to the [Fee] Agreement." *Id.* at 2.

13. The Success Return was to be split between Defendants and Burford *pro rata* "based on the relative portion of [Burford's] and [Defendants'] investments in the Arbitration (*i.e.* the Purchase Price and the Contingency Fee)." *Id.* at 6-7. Thus, the more Defendants billed against

3

the cap amount in legal spending or beyond that toward Burford's maximum Commitment Amount, the more Plaintiff was at risk of paying in "Success Return", whether to Defendants or Burford.

### *iii.*     ***Defendants' Collusion***

14.     By May 2016, Defendants had already billed and been paid (at 100% of rates as opposed to the agreed upon 70%) approximately $1,900,000.00, leaving about $1,800,000.00 left on their agreed upon budgeted spending cap.  At this point, Defendants, motivated by securing continued, guaranteed immediate payment of their fees, colluded with Burford to contrive a scheme to increase Plaintiff's potential liability in Success Return by seeking to increase the cap on expenditure for Defendants' legal fees and, thus, Burford's potential entitlement to an increased multiple of Success Return.  In recognition of the need for Plaintiff's approval to increase the cap on legal spending, Defendants approached Plaintiff and sought his signature on an amendment to the FPFA.  Plaintiff declined to sign the amendment due to the lack of immediate need; Defendants' representation of the $3,690,000.00 cap; based upon remaining funds available under the existing FPFA cap and his ability to, when/if necessary, at a later date, arrange alternative funding for the Arbitration.

15.     Despite Plaintiff's express declination to sign the proposed amendment, Defendants and Burford executed an agreement amongst themselves (the "Side Agreement") whereby Burford agreed to increase their cap on legal spending during the pendency of the arbitration in exchange for Defendants' agreements to waive entitlement to fees under the Fee Agreement and limit their fee entitled to a "maximum fee of US $4,460,000.00." *See May 16, 2016, Agreement Between Craig Miles and Van Buren FundingCo, LLC.*

4

### *iv.* *The PCA Case No 2015-23 Arbitration*

16. On August 21, 2017, Plaintiff's seven-day arbitration evidentiary hearing against the Socialist Republic of Vietnam commenced. At issue in the arbitration was Plaintiff's claim that the Vietnamese government had illegally dispossessed him of valuable real properties and other personal property in the Socialist Republic of Vietnam (the "**Property**"). Aside from establishing Plaintiff's rightful ownership of the Property at the time the Vietnamese government took them, the success of Plaintiff's claim hinged on his ability to establish the true present day value of the Property. Toward that end, Defendants identified expert witnesses, Savills Vietnam Co., Ltd, that were tasked by Defendants with offering their expert opinions as to the proper value of the real estate properties taken from Plaintiff. Defendants instructed, worked closely with, and engaged Savills directly providing advice, information, data, and guidance as to the real estate properties to be included in the valuation and legally cognizable methodologies experts should employ in order to complete their work. Defendants' efforts resulted in an expert report opining that the Vietnamese government had taken property from Plaintiff valued at USD 213,990,000.00 by employing both the "comparable" and "discounted cash flow" valuation methodologies. On or around June 2015 and February 2017, Defendants offered the expert reports of Savills Vietnam Co., Ltd, as evidence in the arbitration and the testimony of a Savills Vietnam Co., Ltd Deputy Managing Director at the evidentiary hearing in August 2017. The Defendants failed to offer expert evidence or corroborating evidence to the Tribunal to assess the fact or quantum of the loss suffered in respect of the personal property. The Vietnamese government did not offer an alternative valuation, but did offer expert opinions criticizing Plaintiff's expert's opinions and/or methodology on the real estate properties and the lack of expert evidence or corroborating evidence supporting in support of the fact or quantum of the loss suffered in respect of the personal property.

After the hearing, Defendants attempted to supplement the evidentiary record with "a chart of citations to documents containing references to the real estate properties making up part of the Property. Defendants' attempt was denied by the tribunal as untimely.

    *v.*    ***Award Allocation***

    17.    On April 10, 2019, Plaintiff prevailed in the Arbitration. The total amount of the award was approximately $45,416,439.65. This represented a drastic departure from Plaintiff's entitlement and Plaintiff's evidence of valuation because: (i) for the personal property Plaintiff's evidence was the only evidence before the Tribunal and Defendants provided no expert evidence or corroborating evidence for the Tribunal to assess the fact or quantum of the loss suffered for example no valuation evidence was provided for the vintage cars or antique artwork therefore there was no way for the Tribunal to make a finding as to the existence or value of this personal property; (ii) the arbitral panel rejected the valuation approaches advanced by the Defendants on the real estate properties finding such methodologies unreliable as they did not use a legally cognizable/supportable methodology and/or did not adequately employ / support such methodologies. Therefore, in the absence of any other opinions on valuation, but finding that the Vietnamese government had indeed damaged Plaintiff, the arbitral panel utilized a default valuation method that produced a damage figure grossly at odds with the true amount of Plaintiff's damage. Plaintiff's efforts to appeal, modify, and/or correct this mistake in the award ended on or around July 29, 2019, when all possible avenues of appeal had been exhausted.

    18.    The Republic of Vietnam made payment under the Award in October 2019. In November 2019, Defendants relied on Burford to calculate the allocation between themselves, Defendants, and Plaintiff. Burford's allocation was based upon calculation of a Purchase Price and Success Return that factored in amounts well beyond the cap Plaintiff agreed to in the FPFA.

Plaintiff expressly instructed Defendants not to distribute funds from their trust account based upon this erroneous allocation. Instead, Plaintiff instructed Defendants to distribute the undisputed portion of the funds to the parties while they continued to work through any issues/disputes relating to the remainder. However, Defendants ignored Plaintiff's express instructions to maintain the safekeeping of property and distributed all funds from their trust account in the exact manner instructed by Burford, which, represented a gross overpayment to both Burford and Defendants.

19. Defendants' active representation of Plaintiff in litigation, which included other claims in arbitration between Plaintiff and The Socialist Republic of Vietnam, ended and Plaintiff retained new counsel. In February 2021, Plaintiff's new counsel requested that Defendants forward all client file materials to them in order for new counsel to continue with all related matters in arbitration. Defendants provided some electronically stored information in a series of electronic transfer tranches, but represented to new counsel that there remained a significant number of boxes of physical file materials that Defendants possessed. Despite repeated attempts by Plaintiff to secure possession of all these client file materials, Defendants have expressly refused to make them all available to Plaintiff and/or his new counsel, thus putting Plaintiff's interests and existing related claims in arbitration at unreasonable and unnecessary risk.

## CAUSES OF ACTION

### A. BREACHES OF FIDUCIARY DUTY

20. All preceding paragraphs are incorporated herein by reference.

21. At all times material to Defendants' representation of the Plaintiff, the attorney-client relationship created a fiduciary duty that required Defendants to exercise the highest degree of care, good faith, and honest dealing, and obligating them to commit no act of deception or misrepresentation no matter how slight.

22. Additionally, Defendants also owed Plaintiff the following fiduciary duties:

(a) Duty of loyalty, honesty and utmost good faith;

(b) Duty of candor;

(c) Duty to refrain from self-dealing;

(d) Duty to act with integrity of the strictest kind;

(e) Duty of fair, honest dealing;

(f) Duty of full disclosure;

(g) Duty to timely disclose all material facts known to Defendants that might affect Plaintiff's decisions pertaining to the continued retention of Defendants as Plaintiff's counsel in the Arbitration;

(h) Duty to represent Plaintiff with undivided loyalty;

(i) Duty to act in the best interests of Plaintiff, unclouded by the lawyer's selfish interests or personal gain;

(j) Duty to act with absolute perfect candor, openness, honesty, and without any concealment or deception, no matter how slight;

(k) Duty to avoid any conflicts of interest;

(l) Duty to properly and fully disclose conflicts of interest; and

(m) Duty of obedience.

23. In the alternative to and/or in addition to any other causes of action alleged herein, Defendants breached the foregoing fiduciary duties owed to Plaintiff by their conduct as stated herein and such breaches proximately caused Plaintiff damage.

24. As a result of such breaches of fiduciary duty, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this court, including without limitation consequential damages, plus pre-judgment interest, post-judgment interest, and costs as provided by law.

B. **NEGLIGENCE**

25. All preceding paragraphs are incorporated herein by reference.

26. Pleading in the alternative without waiving the foregoing causes of actions plead, in connection with the representation described herein, if the overpayment of funds and other causes of damages described were the product of mistake, then Plaintiff asserts that Defendants committed various negligent acts, omissions, breaches of duties, misrepresentations, and failures to make appropriate disclosures, as set forth above. These acts or omissions were each collectively or singularly a proximate cause damage to Plaintiff, including, among other things:

   (a) Failing to reasonably manage their billing within the assured fee cap of total legal spend of $3,690,000.00;

   (b) Failing to properly account for holdbacks on billings prior to May 2016;

   (c) Failing to reasonably communicate the amount of billings and agreed upon holdbacks to Plaintiff;

   (d) Failing to properly document and/or secure Plaintiff's authorization to attempt to amend any obligations of Plaintiff under the FPFA;

   (e) Failing to utilize proper inputs for calculating the Purchase Price under the FPFA as it relates to insurance premiums;

   (f) Distributing funds from their client trust account without fully understanding the legal bases of calculations utilized therefor;

   (g) Failing to provide Plaintiff with sufficient and/or reasonably accurate information for the Plaintiff to make informed decisions regarding retention of Defendants as counsel for the Arbitration;

   (h) Failing to timely turnover file materials belonging to Plaintiff;

27. Additionally, Plaintiff allege that, independent of the manner in which Defendants disbursed Plaintiff's funds held in trust, Plaintiff alleges the following acts, errors, and/or omissions of negligence all of which taken singularly or collectively, are a proximate cause of damage to Plaintiff:

(a) Failing to engage expert evidence or provide corroborating evidence in respect of personal property;

(b) Failing to warn or advise the Plaintiff that no expert evidence or corroborating evidence had been provided to the Tribunal to assess the facts or quantum of the loss suffered in respect of personal property;

(c) Failing to properly task valuation / damage experts in the underlying arbitration in respect of the Property;

(d) Failing to provide valuation / damage experts in the underlying arbitration with all appropriate supporting documentation, advice and instruction;

(e) Failing to properly identify, quantify the size of and value all real estate property subject to Plaintiff's underlying damage claim against the Socialist Republic of Vietnam;

(f) Failing to properly communicate with Plaintiff regarding the substance of the damage claim being asserted in the underlying arbitration;

(g) Failing to correct mistakes in and/or or timely supplement submissions after errors, omissions and shortfalls were raised, discussed or highlighted by Plaintiff;

(h) Failing to offer legally cognizable evidence of the full extent of Plaintiff's damages in the underlying arbitration;

(i) Failing to recognize that expert evidence was necessary for Plaintiff to receive his full entitlement;

(j) Failing to recognize that the basis for the expert's opinions offered in arbitration were legally deficient and/or insufficient to form the basis of a damages claim acceptable to the tribunal based on applicable law;

(k) Failing to instruct expert on acceptable basis for damages that, more likely than not, would have been legally sustainable and form the basis of a larger award consistent with the damages Plaintiff actually suffered; and

(l) Failing to timely supplement the evidentiary record in the underlying arbitration proceeding with all relevant damage evidence.

28.   Defendants demonstrated a wanton and/or reckless disregard for the rights, interests, and welfare of Plaintiff, conscious indifference to the protection of Plaintiff's interests for the damages and losses reasonably foreseen as a consequence of their actions so as to constitute

gross negligence as that term is defined under Texas law. As a result of such negligent acts and omissions, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this court, including without limitation consequential damages, plus pre-judgment interest, post-judgment interest, and costs as provided by law.

### C. MISREPRESENTATIONS/FRAUD

29. All preceding paragraphs are incorporated herein by reference.

30. In the alternative and/or addition to any other causes of action alleged herein, Defendants made numerous material representations to Plaintiff in regard to the amount of fees to be collected and the manner of disbursement of recovery made or to be made in the underlying arbitration. Defendants made all such misrepresentations either with knowledge of their falsity, recklessly without any knowledge of the truth or falsity thereof and as a positive assertion, or negligently without exercising reasonable care or competence in obtaining or communicating the information.

31. Defendants also made all such representations with the intent that Plaintiff and Burford would act in reliance thereon, which Plaintiff and Burford did.

32. In addition or, in the alternative, Defendants had special knowledge regarding the underlying arbitration and the rights and/or duties of lawyers practicing in similar circumstances and knew and/or should have known that Plaintiff was justified in relying upon Defendants' special knowledge.

33. In addition or, in the alternative, during the course of its business and in a transaction in which Burford had a pecuniary interest, Defendants supplied false information to Plaintiff in the guidance of its business, upon which Plaintiff relied to his detriment.

34. As a result of such misrepresentations, Plaintiff has suffered damages, proximately caused thereby, in an amount in excess of the minimum jurisdictional limits of this court, including without limitation consequential damages, plus pre-judgment interest, post-judgment interest, and costs as provided by law. Plaintiff was induced to his detriment into entering the funding agreement and the engagement agreement and the attorney client relationship with defendant lawyers itself based on defendant's' fraudulent statements or misrepresentation of facts material to the representation and plaintiff's interests.

### D. FORFEITURE OF FEE

35. All preceding paragraphs are incorporated herein by reference.

36. Due to the egregious nature of Defendants' breaches of fiduciary duty as outlined above, Plaintiff is entitled to disgorge the fees paid or due to Defendants. Thus, Plaintiff hereby seeks fee forfeiture.

### E. PUNITIVE DAMAGES

37. All preceding paragraphs are incorporated herein by reference.

38. Plaintiff sues to recover punitive damages from Defendants taking into consideration the nature of the wrong, the character of the conduct involved, the degree of culpability of Defendants, the situation and sensibilities of the parties concerned, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of Defendant King & Spalding. Additionally, Plaintiff will also show that Defendants' misconduct: either: (i) constituted fraud; (ii) constituted malice, that is, was committed with the specific intent to cause substantial injury or harm to Plaintiff; or (iii) constituted gross negligence in that Defendants were aware at the time of the extreme degree of risk of harm to Plaintiff presented, but nevertheless proceeded with conscious indifference to the rights and welfare of Plaintiff. Therefore, Plaintiff

seeks punitive and/or exemplary damages in an amount that, as allowed under Texas law, will inhibit and deter Defendants from engaging in this type of conduct in the future.

## JURY DEMAND

39. Plaintiff desires to have a jury decide this case and makes this formal request pursuant to TEX. R. CIV. P. 216. The appropriate jury fee was paid contemporaneously with the filing of the original petition.

## DISCOVERY RULE & EQUITABLE TOLLING

40. Plaintiffs affirmatively plead the application of the Discovery Rule as established and understood under Texas law as to Plaintiffs' claims against Defendants set forth hereinabove.

41. Additionally, Plaintiff affirmatively plead application of equitable tolling pursuant to Texas law as established in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991).

## PRAYER

42. Wherefore, Plaintiff requests that Defendants be required answer these claims and that judgment be entered against Defendants in favor of Plaintiff for:

   (1) Actual damages in an amount in excess of the minimum jurisdictional limits of this Court;

   (2) Consequential damages resulting naturally, but not necessarily, from Defendants' negligence, breaches of fiduciary duty, or misrepresentations;

   (3) Punitive damages for Defendants' fraud, malicious conduct, gross negligence or conscious indifference to the rights and welfare of Plaintiff;

   (4) Prejudgment and post-judgment interest as provided by applicable law;

   (5) All costs in prosecuting this litigation; and

   (6) Any additional relief, legal and equitable, general or special, to which Plaintiff may be justly or equitably entitled.

Respectfully submitted,

*/s/ Brett Wagner*
Brett Wagner
State Bar No. 20654270
brett@dwlawyers.com
Ryan W. Smith
State Bar No. 24063010
ryan@dwlawyers.com
DOHERTY WAGNER
13810 Champion Forest Drive, Suite 225
Houston, Texas 77069
281-583-8700 Telephone
281-583-8701 Facsimile
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of records, as listed below, via e-mail, facsimile, hand delivery, electronic transmission, and/or certified mail, return receipt requested, on the 2nd day of July 2021.

Barrett H. Reasoner
breasoner@gibbsbruns.com
Gibbs & Bruns LLP
1100 Louisiana Street, Suite 5300
Houston, Texas 77002

*/s/ Brett Wagner*
Brett Wagner

14