Exhibit 4

6/11/2021 12:37 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 54330619
By: Maria Rodriguez
Filed: 6/11/2021 12:37 PM

CAUSE NO. . _____

| | | |
|---|---|---|
| TRINH VINH BINH, | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| V. | § | HARRIS COUNTY, T E X A S |
| | § | |
| KING & SPALDING, LLP, REGINALD | § | |
| R. SMITH, and CRAIG S. MILES, | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Trinh Vinh Binh ("Plaintiff") files this Original Petition complaining of King & Spalding, LLP ("K&S"), Reginald R. Smith ("Smith"), and Craig S. Miles ("Miles") (collectively "Defendants").

### SUMMARY

1.      This case illustrates what happens when attorneys, retained by a client to represent that client in arbitration, decide instead to represent their own pecuniary interests and those of a third-party funder and to make a mockery of the fiduciary obligations an attorney owes to their clients.

### PARTIES

2.      Trinh Vinh Binh is an individual citizen and resident of Netherlands.

3.      King & Spalding, LLP is a Georgia limited liability partnership which may be served with process by serving its registered agent Tracie J. Renfroe, 1100 Louisiana Street, Suite 4100, Houston, Texas 77002.

4.      Reginald R. Smith is a citizen and resident of Texas who may be served with process at his place of business located at 1100 Louisiana, Suite 4100, Houston, Texas 77002.

1

5.      Craig S. Miles is a citizen and resident of Texas who may be served with process at his place of business located at <u>1100 Louisiana, Suite 4100, Houston, Texas 77002</u>.

6.      Smith and Miles were at all relevant times acting within the scope of their duties as attorneys with and partners of King & Spalding, LLP**.**

## VENUE

7.      Venue in this proceeding in Harris County is proper under Section 15.002 and Section 15.005 of the Texas Civil Practices & Remedies Code in that: (i) all or a substantial part of the events or omissions giving rise to the claims set forth below occurred in Harris County; (ii) Defendants Smith and Miles reside in Harris County and resided in Harris County at the time the causes of action set forth below accrued; (iii) the principal office of King & Spalding, LLP in Texas is located at 1100 Louisiana, Suite 4100, Houston, Texas 77002; and (iv) all the claims or causes of action set forth below arise out of the same transaction, occurrence or series of transactions or occurrences.

## DISCOVERY CONTROL PLAN

8.      Plaintiff pleads that discovery should be conducted in accordance with Level Two pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

9.      Plaintiff seeks monetary relief of over $1,000,000.

## FACTUAL BACKGROUND

**A.  OVERVIEW**

   ***i.    The Engagement***

10.      On March 18, 2015, Miles, on behalf of K&S, and Plaintiff entered into an engagement agreement (the "Fee Agreement") for Defendants to represent Plaintiff in a claim in arbitration styled *Trinh Vinh Binh and Binh Chau Joint Stock Company v. The Socialist Republic*

2

*of Vietnam*, noticed on June 24, 2014 (the "Arbitration"). The Fee Agreement required Defendants to holdback 30% of billings for fees and defer payment of such amount until the conclusion of their representation.

### ii.    The Funding Agreement

11.    Contemporaneously with the execution of the Fee Agreement, Plaintiff executed a Forward Purchase Funding Agreement to fund the arbitration (the "FPFA") with Burford Capital LLC (f/k/a Gerchen Keller Capital, LLC and/or Van Buren FundingCo, LLC). The FPFA contained a cap on spending for the Arbitration of $4,678,000.00. After initial deployments (distributions) were made off the cap amount for various initial costs/expenses, there remained a $3,690,000.00 cap available for legal expenses. Despite the boilerplate language of the Fee Agreement regarding costs, Defendants represented to Plaintiff and Burford that they could complete the Arbitration within that cap and, in consideration thereof, remained engaged as arbitration counsel by Plaintiff for the duration of the Arbitration. In exchange for fronting expenses for the Arbitration, Burford was supposed to receive their "Purchase Price" (consisting of the total amount of "Deployments" up to the Commitment Amount at the conclusion of the Arbitration).

12.    The FPFA also contained complicated and confusing provisions for payment of a "Success Return" to be paid to Burford *and* Defendants in the event Plaintiff was successful in the Arbitration. Under the FPFA, the Success Return was defined as the greater of (a) the sum of (i) two (2) times the Purchase Price and (ii) two (2) times the Contingency Fee. *See Forward Purchase Funding Agreement* at 4. A contingency fee is not referenced in the Fee Agreement, however, the FPFA defined "Contingency Fee" as: "the amount of holdback of or discounts on Arbitration Counsel's fees pursuant to the [Fee] Agreement." *Id.* at 2.

13.     The Success Return was to be split between Defendants and Burford *pro rata* "based on the relative portion of [Burford's] and [Defendants'] investments in the Arbitration (*i.e.* the Purchase Price and the Contingency Fee)." *Id.* at 6-7. Thus, the more Defendants billed against the cap amount in legal spending or beyond that toward Burford's maximum Commitment Amount, the more Plaintiff was at risk of paying in "Success Return", whether to Defendants or Burford.

### *iii.     Defendants' Collusion*

14.     By May 2016, Defendants had already billed and been paid (at 100% of rates as opposed to the agreed upon 70%) approximately $1,900,000.00, leaving about $1,800,000.00 left on their agreed upon budgeted spending cap. At this point, Defendants, motivated by securing continued, guaranteed immediate payment of their fees, colluded with Burford to contrive a scheme to increase Plaintiff's potential liability in Success Return by seeking to increase the cap on expenditure for Defendants' legal fees and, thus, Burford's potential entitlement to an increased multiple of Success Return. In recognition of the need for Plaintiff's approval to increase the cap on legal spending, Defendants approached Plaintiff and sought his signature on an amendment to the FPFA. Plaintiff declined to sign the amendment due to the lack of immediate need; Defendants' representation of the $3,690,000.00 cap; based upon remaining funds available under the existing FPFA cap and his ability to, when/if necessary, at a later date, arrange alternative funding for the Arbitration.

15.     Despite Plaintiff's express declination to sign the proposed amendment, Defendants and Burford executed an agreement amongst themselves (the "Side Agreement") whereby Burford agreed to increase their cap on legal spending during the pendency of the arbitration in exchange for Defendants' agreements to waive entitlement to fees under the Fee Agreement and limit their

fee entitled to a "maximum fee of US $4,460,000.00." *See May 16, 2016, Agreement Between Craig Miles and Van Buren FundingCo, LLC.*

### iv.    *Award Allocation*

16.    On April 10, 2019, Plaintiff prevailed in the Arbitration.  The total amount of the award was approximately $46,000,000.00.  The Republic of Vietnam made payment under the Award in October 2019.  In November 2019, Defendants relied on Burford to calculate the allocation between themselves, Defendants, and Plaintiff.  Burford's allocation was based upon calculation of a Purchase Price and Success Return that factored in amounts well beyond the cap Plaintiff agreed to in the FPFA.  Plaintiff expressly instructed Defendants not to distribute funds from their trust account based upon this erroneous allocation.   Instead, Plaintiff instructed Defendants to distribute the undisputed portion of the funds to the parties while they continued to work through any issues/disputes relating to the remainder.   However, Defendants ignored Plaintiff's express instructions to maintain the safekeeping of property and distributed all funds from their trust account in the exact manner instructed by Burford, which, represented a gross overpayment to both Burford and Defendants.

17.    Defendants' active representation of Plaintiff in litigation, which included other claims in arbitration between Plaintiff and The Socialist Republic of Vietnam, ended and Plaintiff retained new counsel.   In February 2021, Plaintiff's new counsel requested that Defendants forward all client file materials to them in order for new counsel to continue with all related matters in arbitration.  Defendants provided some electronically stored information in a series of electronic transfer tranches, but represented to new counsel that there remained a significant number of boxes of physical file materials that Defendants possessed.  Despite repeated attempts by Plaintiff to secure possession of all these client file materials, Defendants have expressly refused to make

them all available to Plaintiff and/or his new counsel, thus putting Plaintiff's interests and existing related claims in arbitration at unreasonable and unnecessary risk.

## CAUSES OF ACTION

### A. BREACHES OF FIDUCIARY DUTY

18.     All preceding paragraphs are incorporated herein by reference.

19.     At all times material to Defendants' representation of the Plaintiff, the attorney-client relationship created a fiduciary duty that required Defendants to exercise the highest degree of care, good faith, and honest dealing, and obligating them to commit no act of deception or misrepresentation no matter how slight.

20.     Additionally, Defendants also owed Plaintiff the following fiduciary duties:

(a)     Duty of loyalty, honesty and utmost good faith;

(b)     Duty of candor;

(c)     Duty to refrain from self-dealing;

(d)     Duty to act with integrity of the strictest kind;

(e)     Duty of fair, honest dealing;

(f)     Duty of full disclosure;

(g)     Duty to timely disclose all material facts known to Defendants that might affect Plaintiff's decisions pertaining to the continued retention of Defendants as Plaintiff's counsel in the Arbitration;

(h)     Duty to represent Plaintiff with undivided loyalty;

(i)     Duty to act in the best interests of Plaintiff, unclouded by the lawyer's selfish interests or personal gain;

(j)     Duty to act with absolute perfect candor, openness, honesty, and without any concealment or deception, no matter how slight;

(k)     Duty to avoid any conflicts of interest;

6

(l)   Duty to properly and fully disclose conflicts of interest; and

(m)  Duty of obedience.

21.      In the alternative to and/or in addition to any other causes of action alleged herein, Defendants breached the foregoing fiduciary duties owed to Plaintiff by their conduct as stated herein and such breaches proximately caused Plaintiff damage.

22.      As a result of such breaches of fiduciary duty, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this court, including without limitation consequential damages, plus pre-judgment interest, post-judgment interest, and costs as provided by law.

## B. NEGLIGENCE

23.      All preceding paragraphs are incorporated herein by reference.

24.      Pleading in the alternative without waiving the foregoing causes of actions plead, in connection with the representation described herein, if the overpayment of funds and other causes of damages described were the product of mistake, then Plaintiff asserts that Defendants committed various negligent acts, omissions, breaches of duties, misrepresentations, and failures to make appropriate disclosures, as set forth above.  These acts or omissions were each collectively or singularly a proximate cause damage to Plaintiff, including, among other things:

(a)   Failing to reasonably manage their billing within the assured fee cap of total legal spend of $3,690,000.00;

(b)   Failing to properly account for holdbacks on billings prior to May 2016;

(c)   Failing to reasonably communicate the amount of billings and agreed upon holdbacks to Plaintiff;

(d)   Failing to properly document and/or secure Plaintiff's authorization to attempt to amend any obligations of Plaintiff under the FPFA;

(e)   Failing to utilize proper inputs for calculating the Purchase Price under the FPFA as it relates to insurance premiums;

(f)   Distributing funds from their client trust account without fully understanding the legal bases of calculations utilized therefor;

(g)   Failing to provide Plaintiff with sufficient and/or reasonably accurate information for the Plaintiff to make informed decisions regarding retention of Defendants as counsel for the Arbitration; and

(h)   Failing to timely turnover file materials belonging to Plaintiff.

25.     Defendants demonstrated a wanton and/or reckless disregard for the rights, interests, and welfare of Plaintiff, conscious indifference to the protection of Plaintiff's interests for the damages and losses reasonably foreseen as a consequence of their actions so as to constitute gross negligence as that term is defined under Texas law.  As a result of such negligent acts and omissions, Plaintiff has suffered damages in an amount in excess of the minimum jurisdictional limits of this court, including without limitation consequential damages, plus pre-judgment interest, post-judgment interest, and costs as provided by law.

**C.  MISREPRESENTATIONS/FRAUD**

26.     All preceding paragraphs are incorporated herein by reference.

27.     In the alternative and/or addition to any other causes of action alleged herein, Defendants made numerous material representations to Plaintiff in regard to the amount of fees to be collected and the manner of disbursement of recovery made or to be made in the underlying arbitration.  Defendants made all such misrepresentations either with knowledge of their falsity, recklessly without any knowledge of the truth or falsity thereof and as a positive assertion, or negligently without exercising reasonable care or competence in obtaining or communicating the information.

28.     Defendants also made all such representations with the intent that Plaintiff and Burford would act in reliance thereon, which Plaintiff and Burford did.

29.     In addition or, in the alternative, Defendants had special knowledge regarding the underlying arbitration and the rights and/or duties of lawyers practicing in similar circumstances and knew and/or should have known that Plaintiff was justified in relying upon Defendants' special knowledge.

30.     In addition or, in the alternative, during the course of its business and in a transaction in which Burford had a pecuniary interest, Defendants supplied false information to Plaintiff in the guidance of its business, upon which Plaintiff relied to his detriment.

31.     As a result of such misrepresentations, Plaintiff has suffered damages, proximately caused thereby, in an amount in excess of the minimum jurisdictional limits of this court, including without limitation consequential damages, plus pre-judgment interest, post-judgment interest, and costs as provided by law.   Plaintiff was induced to his detriment into entering the funding agreement and the engagement agreement and the attorney client relationship with defendant lawyers itself  based on defendant's' fraudulent statements or misrepresentation of facts material to the representation and plaintiff's interests.

**D.   FORFEITURE OF FEE**

32.     All preceding paragraphs are incorporated herein by reference.

33.     Due to the egregious nature of Defendants' breaches of fiduciary duty as outlined above, Plaintiff is entitled to disgorge the fees paid or due to Defendants.   Thus, Plaintiff hereby seeks fee forfeiture.

**E.   PUNITIVE DAMAGES**

34.     All preceding paragraphs are incorporated herein by reference.

9

35.     Plaintiff sues to recover punitive damages from Defendants taking into consideration the nature of the wrong, the character of the conduct involved, the degree of culpability of Defendants, the situation and sensibilities of the parties concerned, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of Defendant King & Spalding.  Additionally, Plaintiff will also show that Defendants' misconduct: either: (i) constituted fraud; (ii) constituted malice, that is, was committed with the specific intent to cause substantial injury or harm to Plaintiff; or (iii) constituted gross negligence in that Defendants were aware at the time of the extreme degree of risk of harm to Plaintiff presented, but nevertheless proceeded with conscious indifference to the rights and welfare of Plaintiff.  Therefore, Plaintiff seeks punitive and/or exemplary damages in an amount that, as allowed under Texas law, will inhibit and deter Defendants from engaging in this type of conduct in the future.

### JURY DEMAND

36.     Plaintiff desires to have a jury decide this case and makes this formal request pursuant to TEX. R. CIV. P. 216.  The appropriate jury fee is being paid contemporaneously with the filing of this original petition.

### DISCOVERY RULE

37.     Plaintiffs affirmatively plead the application of the Discovery Rule as established and understood under Texas law as to Plaintiffs' claims against Defendants set forth hereinabove.

#### PLAINTIFF'S REQUESTS FOR DISCLOSURE TO DEFENDANTS

38.     Pursuant to TEX. R. CIV. P. 194, each Defendant is requested to disclose, within fifty (50) days of service of this request, the information or material described in Rule 194.2.

**PLAINTIFF'S REQUESTS FOR PRODUCTION**

TO:    DEFENDANTS, KING & SPALDING, LLP, REGINALD R. SMITH, AND CRAIG S. MILES, 1100 LOUISIANA, SUITE 4100, HOUSTON, TEXAS 77002.

39.    Plaintiff, serves these Requests for Production on Defendants, as named herein above, as allowed by Texas Rule of Civil Procedure 196.  Each Defendant must produce all requested documents, as they are kept in the ordinary course of business or organized and labeled to correspond with categories in each request, for inspection and copying not more than 50 days after service of this request, at the offices of Doherty Wagner, 13810 Champion Forest Drive, Suite 225, Houston, Texas 77069.

**INSTRUCTIONS**

1.    Answer each request for documents separately by listing the documents and by describing them as defined below.  If documents produced in response to this request are numbered for production, in each response provide both the information that identifies the document and the document's number.

2.    For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance.  Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

    a.    When identifying the document, you must state the following:
      (1)    The nature of the document (e.g., letter, handwritten note).
      (2)    The title or heading that appears on the document.
      (3)    The date of the document and the date of each addendum, supplement, or other addition or change.
      (4)    The identities of the author, signer of the document, and person on whose behalf or at whose request or direction the document was prepared or delivered.

    b.    When identifying the person, you must state the following:
      (1)    The full name.
      (2)    The present or last known residential address and residential telephone number.
      (3)    The present or last known office address and office telephone number.
      (4)    The present occupation, job title, employer, and employer's address.

11

<u>**Definitions**</u>

1.      "Plaintiff" and/or the party's full or abbreviated name or a pronoun referring to a party, means the party and, when applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates or any other person acting in concert with the party or under the party's control, whether directly or indirectly.

2.      "Defendant" and/or the party's full or abbreviated name or a pronoun referring to a party, means the party and, when applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates or any other person acting in concert with the party or under the party's control, whether directly or indirectly (other than your attorneys in this case).  **<u>Each Defendant is to individually respond to each request for production.</u>**

3.      "You" or "your" means any Defendant party, his/her/its successors, predecessor, divisions, subsidiaries, present and/or former officers, agents, employees, and all other persons acting on behalf of Defendant or his/her/its successors, predecessors, divisions, and subsidiaries (other than your attorneys in this case).

4.      "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body or any other organization, business or legal entity, and all predecessors or successors in interest.

5.      "Communication" means any oral or written communication of which a Defendant has knowledge, information, and/or belief.

7.      "Underlying claims" means the claims made in the following litigation: Any and all litigation initiated by Defendant on behalf of Plaintiff.

8.      "Document" means all written, typed, or printed matter and all magnetic, electronic, or other records or documentation of any kind or description in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys, or other agents, whether or not prepared by you, that constitute or contain matters relevant to the subject matter of the action. "Document" includes, but is not limited to, the following: letters, reports, charts, diagrams, correspondence, telegrams, memoranda, notes, records, minutes, contracts, agreements, records or notations of telephone or personal conversations or conferences, interoffice communications, e-mail, text messages, microfilm, bulletins, circulars, pamphlets, photographs, faxes, invoices, tape recordings, computer printouts, drafts, résumés, logs, worksheets, etc.

9.      "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined.  The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind.  Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets,

12

database files, charts, graphs, and outlines; metadata; TIF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; and any miscellaneous files or file fragments.  Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges), microfiche, punched cards, etc.  Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

       10.    "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

       11.    "Mobile device" means any cellular telephone, smart phone, smart device, tablet, notebook computer, satellite telephone, pager, personal digital assistant, handheld computer, electronic rolodex, walkie-talkie, or any combination of these devices.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**To:**    **Defendants, King & Spalding, LLP, Reginald R. Smith, and Craig S. Miles**

1.    Produce your entire, original, unaltered file including, but not limited to all internal emails, text messages, notes, memoranda, research, bills, pre-billing time sheets/slips, internal file creation documents and/or forms, notes, and/or attorney work papers pertaining your representation of any party acting on behalf of Trinh Vinh Binh and/or the Binh Chau Joint Stock Company.

    **Response:**

2.    Produce all documents and/or communication exchanged between you and any person acting on behalf of Gerchen Keller Capital, LLC, Van Buren FundingCo., LLC, Burford Capital LLC, and/or any party or individual acting on their behalf, from the inception of your representation of Trinh Vinh Binh and/or the Binh Chau Joint Stock Company to present, related to your representation of Trinh Vinh Binh and/or the Binh Chau Joint Stock Company, the Prepaid Forward Purchase Funding Agreement dated March 20, 2015 between Van Buren FundingCo., LLC, Trinh Vinh Binh, and Binh Chau Industrial Development & Real Estate Investment Joint Stock Company, and/or the letter agreement between You and Van Buren FundingCo, LLC dated May 16, 2016.

    **Response:**

3.    Produce all documents representing the full evidentiary file, including but not limited to all submissions, factual and legal exhibits, witness statements, expert reports, and/or appendices, disclosures, correspondences (with the Arbitral Tribunal and/or opposing counsel), procedural orders, hearing bundles, witness examination bundles, hearing transcripts pertaining to your representation of Trinh Vinh Binh and/or Binh Chau Joint Stock Company in relation to *Mr. Trinh*

*Vinh Binh v. Socialist Republic of Vietnam* in respect of the Phu Yen Province Matter and in relation to Arbitration PCA Case No. 2015-23.

> **Response:**

4.      Produce all documents and/or all communications exchanged between you and any person from Savills Vietnam Co LLC (including related Savills affiliates) ("**Savills**") and/or any other valuation experts (the "**Experts**") relating to the assessment, identification or valuation of Mr Trinh's assets in the Republic of Vietnam including service contracts, expert instructions, draft reports, comments, notes, presentations, second opinions and/or any other similar work papers in draft or final form whether created by the Experts and/or Defendants.

> **Response:**

## PRAYER

40.      Wherefore, Plaintiff requests that Defendants be required answer these claims and that judgment be entered against Defendants in favor of Plaintiff for:

(1)      Actual damages in an amount in excess of the minimum jurisdictional limits of this Court;

(2)      Consequential damages resulting naturally, but not necessarily, from Defendants' negligence, breaches of fiduciary duty, or misrepresentations;

(3)      Punitive damages for Defendants' fraud, malicious conduct, gross negligence or conscious indifference to the rights and welfare of Plaintiff;

(4)      Prejudgment and post-judgment interest as provided by applicable law;

(5)      All costs in prosecuting this litigation; and

(6)      Any additional relief, legal and equitable, general or special, to which Plaintiff may be justly or equitably entitled.

Respectfully submitted,

*/s/ Brett Wagner*
Brett Wagner
State Bar No. 20654270
brett@dwlawyers.com
Ryan W. Smith
State Bar No. 24063010
ryan@dwlawyers.com
DOHERTY WAGNER
13810 Champion Forest Drive, Suite 225
Houston, Texas 77069
281-583-8700 Telephone
281-583-8701 Facsimile
**ATTORNEYS FOR PLAINTIFF**