United States District Court
Southern District of Texas
**ENTERED**
January 10, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRINH VINH BINH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-02234 |
| | § | |
| KING & SPALDING LLP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are three motions: first, Defendants' Motion to Compel Arbitration and Dismiss (Doc. #4), Plaintiff's Response (Doc. #15), and Defendants' Reply (Doc. #18); second, Plaintiff's Motion to Remand (Doc. #11), Defendants' Response (Doc. #20), Plaintiff's Reply (Doc. #22); and third, Defendants' Motion to Seal (Doc. #5), Plaintiff's Response (Doc. #14), and Defendants' Reply (Doc. #19). Having reviewed the parties' arguments and applicable legal authority, the Court denies the Plaintiff's Motion to Remand, grants Defendants' Motion to Compel Arbitration, and grants Defendants' Motion to Seal.

**I.      Background**

This dispute arises out of an arbitration proceeding in which King & Spalding LLP and two of its lawyers, Reginald Smith and Craig Miles, (collectively "Defendants") represented Plaintiff Trinh Binh against the Republic of Vietnam. Doc. #4 at 2. The parties confirmed the terms of the legal representation in an Engagement Agreement. Doc. #15, Ex. A. As part of their representation, Defendants helped Plaintiff secure litigation funding from a company now known as Burford Capital LLC ("Burford"). Doc. #4 at 2. On March 20, 2015, Plaintiff and Burford

executed a Prepaid Forward Purchase Agreement ("PFPA") to establish how Burford would fund Plaintiff's legal proceedings against the Republic of Vietnam. *See* Doc. #4, Ex. 1. The PFPA includes an arbitration provision which states:

> Any controversy or claim arising out of or relating to this Agreement or any other Transaction Document, or the breach thereof, shall be settled by confidential arbitration in Chicago, Illinois administered by the American Arbitration Association under its Commercial Arbitration Rules. . . . The arbitrator(s) will have the authority to . . . determine his/her/their own jurisdiction by interpreting the scope of this arbitration clause and whether a controversy or claim arises out of or relates to this Agreement or any other Transaction Document.

Doc. #4, Ex. 1 at 13. On the same day, Plaintiff and Defendants executed another document (the "Counsel Letter"), instructing Defendants to distribute any arbitration proceeds in compliance with the PFPA. *See* Doc. #4, Ex. 2. The Counsel Letter is explicitly included in the PFPA's definition of "Transaction Documents." Doc. #4, Ex. 1 at 4.

In 2019, Defendants won an award of more than $45 million on Plaintiff's behalf and obtained payment of the entire amount from the Republic of Vietnam. Doc. 4 at 3. On June 11, 2021, Plaintiff filed this suit in state court against Defendants for allegedly colluding with Burford to improperly distribute the arbitration proceeds in violation of the PFPA. *See* Doc. #4, Ex. 4. On July 2, 2021, Plaintiff amended his Petition to add a claim for defective representation. *See* Doc. #4, Ex. 3. On July 9, 2021, Defendants removed to this Court and now move to compel arbitration. Doc. #1 and Doc. #4. Plaintiff denies that the PFPA's arbitration provision applies to disputes with Defendants and moves to remand. Doc. #11.

**II.     Legal Standard**

The United States is a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), which Congress has codified at 9 U.S.C. § 201, *et seq.*

2

("Convention Act"). *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 375 (5th Cir. 2006). "An arbitration agreement arising out of a legal relationship . . . which is considered as commercial, including a transaction, contract, or agreement [to settle by arbitration a controversy thereafter arising out of such contract or transaction], falls under the Convention." 9 U.S.C. §§ 202, 2. The Convention Act grants federal district courts original and removal jurisdiction over cases related to arbitration agreements falling under the Convention. *Acosta*, 452 F.3d at 375. Under the Convention, "the court should compel arbitration if (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a Convention signatory, (3) the agreement arises out of a commercial legal relationship, and (4) a party to the agreement is not an American citizen." *S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*, 456 F. App'x 481, 483 (5th Cir. 2012). "If these requirements are met, the Convention requires district courts to order arbitration." *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002). This is a "very limited inquiry," and any "doubts as to whether a contract falls under the Convention Act should be resolved in favor of arbitration." *Id.* at 274–75. "[T]he federal policy favoring arbitration applies with special force in the field of international commerce." *Id.* at 275 (quotation omitted). Congress's purpose in enacting the Convention Act was "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Acosta*, 452 F.3d at 376.

Parties can "agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). Parties provide "clear and unmistakable evidence of their intent to delegate these issues" by "expressly incorporating rules

empowering the arbitrator to decide substantive arbitrability." *Halliburton Energy Servs., inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019). If an agreement explicitly binding a signatory "clearly and unmistakably delegates arbitrability," then the delegation applies to the signatory's disputes with nonsignatories as well. *Brittania-U Nigeria, Limited v. Chevron USA, Inc.*, 866 F.3dd 709, 715 (5th Cir. 2017).

### III. Analysis

Defendants argue that, although they are not signatories to the PFPA, Plaintiff's claims against them are subject to arbitration for a number of reasons. Doc. #4 at 4. Defendants first argue that the applicable arbitration agreement is governed by the Convention, which requires the Court to compel arbitration based on the same factors that established grounds for removal. *Id.* Alternatively, Defendant argues that should the Court reach the terms of the arbitration agreement, the PFPA delegates all arbitrability questions to the arbitrator. *Id.* at 6. Lastly, Defendant argues that even if the Court considers whether Plaintiff's claims are arbitrable, it must answer that question in the affirmative. *Id.* at 7.

Plaintiff responds that this Court lacks subject-matter jurisdiction and should therefore remand the case back to state court. Doc. #11 at 1. Additionally, Plaintiff disputes one of the Convention factors—whether there was an agreement in writing to arbitrate the dispute. Doc. #15 at 3. Plaintiff initially argues that there is no written agreement to arbitrate the dispute between himself and Defendants because the Defendants did not sign the PFPA and the PFPA's arbitration clause is limited to disputes between signatories. *Id.* at 4. Plaintiff alternatively argues that Defendants, as non-signatories, cannot enforce the PFPA's arbitration clause under New York law, which governs the agreement. Doc. #15 at 4.

Whether the Court has jurisdiction and whether the Court should compel arbitration comes down to the same question: whether or not there is an agreement to arbitrate the dispute. Federal district courts have original and removal jurisdiction over cases related to arbitration agreements falling under the Convention. *Acosta*, 452 F.3d at 375. When the requirements are met, "[t]he Convention imposes a mandatory obligation upon federal courts to enforce an arbitration agreement falling within its scope." *Freudensprung*, 379 F.3d at 341. "An explicit delegation clause states that the arbitrator has the power to determine her own jurisdiction or to determine whether specific claims are arbitrable." *Gemini Ins. Co. v. Certain Underwriters at Lloyd's London*, No. CV H-17-1044, 2017 WL 1354149, at *4 (S.D. Tex. Apr. 13, 2017). "Incorporating the [American Arbitration Association] rules into an arbitration agreement makes threshold questions of arbitrability questions for the arbitrator to decide, rather than the court." *Id.*

Here, the PFPA contains a broad arbitration provision, which states that "[a]ny controversy or claim arising out of or relating to this Agreement or any other Transaction Document, or the breach thereof, shall be settled by confidential arbitration in Chicago, Illinois administered by the American Arbitration Association under its Commercial Arbitration Rules." Doc. #4, Ex. 1 at 13. The PFPA defines the term "Transaction Documents" to mean "this Agreement, the Security Agreement, the Consulting Agreement, and the Counsel Letter." *Id.* at 4. Plaintiff does not dispute that the "Counsel Letter" referred to in the PFPA is the letter Plaintiff and Defendants executed on March 20, 2015, instructing Defendants to distribute any arbitration proceeds in compliance with the PFPA. *See* Doc. #15 and Doc. #4 Ex. 2. Nor does Plaintiff dispute that the American Arbitration Association rules are explicitly incorporated into the PFPA. *See id.* Plaintiff and Defendants executed the Counsel Letter on the same day the PFPA was executed to fulfill one of Plaintiff's contractual obligations to Burford. Doc. #11 at 4. Therefore, Plaintiff's claim that

5

Defendant did not distribute funds in accordance with the PFPA is a "controversy . . . arising out of or relating to" the PFPA or Counsel Letter "or the breach thereof." In light of the broad arbitration agreement and the Court's policy of deferring to the arbitrator, the Court finds that the question of arbitrability should be decided by the arbitrator.

Plaintiff next argues that Defendants cannot enforce the PFPA's arbitration clause as non-signatories under New York law, which governs the agreement. Doc. #15 at 4. However, the PFPA's arbitration agreement itself is governed by federal law because the dispute arises from an arbitration involving interstate commerce, notwithstanding the parties' selection of New York law. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1197 (2d Cir. 1996) ("Since the contract evidences a transaction involving interstate commerce, the Federal Arbitration Act applies, notwithstanding the parties' selection of New York law."). Regardless, applying New York law would lead to the same result. Generally, New York law "directs courts to honor a strong presumption in favor of arbitration." *Degi Deutsche Gesellschaft Fuer Immobilienfonds MBH v. Haffey*, 1995 WL 669087, at *4 (S.D.N.Y. Nov. 3, 1995). Courts applying Second Circuit and New York state laws have found that compelling arbitration on arbitrability issues is appropriate where "the non-signatory was explicitly tasked with performing certain duties in the contract containing the arbitration clause," or "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement." *Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605, 612 (S.D.N.Y. 2011); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 209 (2d Cir. 2005). Both descriptions apply to this case. The Court therefore finds that compelling arbitration is proper in this case.

Defendants also move to file the PFPA and Counsel Letter under seal, which Plaintiff opposes. Doc. #5 and Doc. #14. Sealing is appropriate when documents contain "confidential business information" and public disclosure "might place the signatory parties at a competitive

6

disadvantage in future negotiations." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015); *Cellular Commc'ns 'Equip., LLC. v. Apple Inc.*, 2017 WL 10311215, at *3 (E.D. Tex. Jan. 5, 2017). Finding both factors applicable to the documents at issue, the Court grants the Motion to Seal.

### IV. Conclusion

Because the PFPA has a broad delegation clause, this dispute is a controversy arising out of the PFPA, and all doubts are to be resolved in favor of arbitration, the Court finds that the issue of arbitrability must be resolved by an arbitrator. Additionally, it is well established that courts in this Circuit should dismiss, rather than stay, litigation when arbitration will resolve all of the issues in dispute. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1991). Accordingly, because Plaintiff has not identified any issues that will not be resolved by arbitration, Defendants' Motion to Compel Arbitration is GRANTED, Plaintiff's Motion to Remand is DENIED, and this case is DISMISSED. Additionally, because the relevant documents contain confidential business information and public disclose might create a competitive disadvantage in future negotiations, Defendants' Motion to Seal is GRANTED.

It is so ORDERED.

JAN 1 0 2022
Date

The Honorable Alfred H. Bennett
United States District Judge